IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLEN RIDDLE STATION, L.P.,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 21-286 |
| | : | |
| **MIDDLETOWN TOWNSHIP,** | : | |
| Defendant. | : | |

| | |
|---|---|
| **Diamond, J.** | **March 25, 2021** |

# M E M O R A N D U M

Apartment complex owner Glen Riddle Station asks me to remedy a purported due process violation by issuing a state law "mandamus" order prescribing Middletown Township's interpretation and enforcement of its local fire code. I will dismiss because the Court lacks both jurisdiction and the authority to issue a state law mandamus. As a further alternate ground, I will dismiss because GRS has no standing. Finally, even if this action were otherwise viable, I would abstain from hearing it.

## I.  FACTUAL BACKGROUND

In May 2020, Sunoco filed a Declaration of Taking in the Delaware County Common Pleas Court, condemning portions of GRS's property to provide temporary workspace and access road easements for non-party Sunoco LLP's work on the Mariner East 2 pipeline. (Compl., Doc. No. 1, ¶¶ 6-10.) GRS is comprised of five buildings; Sunoco's workspace easement extends through the middle of the property, with three buildings on one side and two on the other. (See Ex. E to Compl., Doc. No. 1-3, at 25.) To reduce noise, Sunoco installed temporary "Sound Walls" along the sides of the easement; the Walls are configured differently during the day and at night. (Compl., Doc. No. 1, ¶¶ 11-12.) This dispute arises from Sunoco's "Sound Walls Plan."

As alleged, before the Walls were completed, GRS asked the Township to be heard regarding any upcoming construction that might affect its property. (Id. ¶¶ 15-18.) As alleged, the Township approved the Plan without hearing from GRS. (Id. ¶¶ 19.) During a January 11, 2021 public meeting, the Township declared the Plan safe, and issued a corresponding "safety declaration" in its January Engineering Report. (Id. ¶ 20.) The Walls were built later that month.

The gravamen of GRS's Complaint is that the Plan is unsafe because it violates several provisions of the "International Fire Code" (which the Township has adopted). (Id. ¶¶ 23-42.) GRS first alleges that the Walls bisect existing roads, violating the fire code requirement that each dwelling be equipped with two separate fire apparatus access roads. (Id. ¶¶ 32-33.) GRS also urges that the Walls: lack required movable gates that can be operated by one person; and obstruct the property's roads, thus violating the code requirement to allow sufficient space for emergency vehicles to turn around on dead-end fire apparatus roads. (Id. ¶¶ 34-40.) GRS urges that in combination, these purported defects might prevent emergency services from easy access to the property during a fire or other emergency. (Id. ¶¶ 54-56.)

## II.    PROCEDURAL BACKGROUND

The record abundantly shows that GRS's objection to the Plan is but one of countless complaints it has made in connection with Mariner East 2's construction. (PUC Compl., Doc. No. 12, Ex. 8; Id. Ex. D, E, F, H, K.) On December 2, 2020, after its complaints were not resolved to its satisfaction, GRS filed a Public Utility Commission complaint against Sunoco alleging, *inter alia*, that the Plan was unsafe, thus violating the Township's fire code. (See generally PUC Compl., Doc. No. 12, Ex. 8; see also id. ¶¶ 51-52, 70.) Although that matter remains pending, the Administrative Law Judge recently ruled that the Commission does not have jurisdiction to hear

allegations of municipal ordinance violations.  (See January 28, 2021 Order, PUC Dkt. No. C-2020-3023129.)

On January 21, 2021, GRS filed the instant two count Complaint:  (1) alleging under § 1983 that the Township violated GRS's procedural due process rights; and (2) asking me to exercise "supplemental jurisdiction" and "cure" that violation by issuing a state law mandamus order directing the Township to interpret and apply specific provisions of its fire code in a manner GRS favors.  (Compl., Doc. No. 1); 28 U.S.C. §§ 1331, 1367.  GRS thus asks me to rule that the Township must comply with local fire code sections D106, D103.4, and D103.5.  (Compl., Doc. No. 1, at 13-14.)  GRS further asks me to direct the Township to bar work on the GRS property until the Township enforces those three provisions against Sunoco, thus "curing" the Walls' "defects" I discussed earlier.  (Id.)  GRS also seeks monetary damages.

On January 25, 2021, GRS filed an "Emergency Motion for Writ of Mandamus and Peremptory Judgment."  (Doc. No. 3.)  Remarkably, GRS never requested a hearing on its "Emergency Motion."  I ordered GRS to serve a copy of the Motion on Sunoco, and asked any interested party to submit a memorandum addressing whether: (1) the Court has jurisdiction to hear this matter; (2) a federal court has the authority to issue a "mandamus" under Pennsylvania procedural law directing a municipality as to how it must interpret and enforce its own ordinances; (3) Sunoco is an indispensable party; (4) GRS has standing; and (5) I am required to abstain from hearing this matter.  (Doc. No. 7.)  GRS, the Township, and Sunoco (as amicus curiae) have submitted memoranda.  (Doc. Nos. 10, 12-13, 17-20.)

The Township now moves to dismiss for lack of subject matter jurisdiction, lack of standing, and failure to state a claim.  (Doc. No. 23); Fed. R. Civ. P. 12(b)(1), (12)(b)(6).  Sunoco

filed a short statement supporting dismissal.  (Doc. No. 25.)  GRS asks me to deny the Township's Motion.  (Doc. No. 26.)

### III.   LEGAL STANDARDS

Motion to Dismiss Under 12(b)(1)

The Third Circuit instructs that a "facial attack" on subject matter jurisdiction:

> is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present.

Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).  In ruling on a facial attack, I must accept as true all facts alleged and construe any inferences in favor of the nonmoving party.  Id.

Because standing is a jurisdictional issue, motions to dismiss for want of standing are commonly addressed under Rule 12(b)(1).  In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012).

Courts disagree as to whether abstention is analyzed under Rule 12(b)(1), Rule 12(b)(6), or distinct standards.  See Bird v. Borough of Moosic, 2020 WL 7699452, at *2 (M.D. Pa. Dec. 28, 2020) (compiling cases).  Compare Jaffery v. Atl. Cty. Prosecutor's Office, 695 F. App'x 38, 42 (3d Cir. 2017) (affirming district court's decision granting 12(b)(1) motion on abstention grounds); Dutton v. Court of Common Pleas of Phila. Domestic Relations Div., 215 F. App'x 161, 162 (3d Cir. 2007) (analyzing abstention motion distinctly from 12(b)(6) or 12(b)(1) motions); Heritage Farms, Inc. v. Solebury Twp., 671 F.2d 743, 745 (3d Cir. 1982) (describing dismissal on abstention grounds as "in the nature of a dismissal under Fed. R. Civ. P. 12(b)(6)").  The distinctions are semantic, however, as all the standards require me to accept as true GRS's factual allegations.

## IV. DISCUSSION

I will dismiss because the Court does not have subject matter jurisdiction. In the alternative, I conclude that GRS lacks standing. In the further alternative, I will dismiss because this Court is without authority to grant the relief GRS seeks. Finally, even in the absence of these defects, I would abstain.

### A. Subject Matter Jurisdiction

I must dismiss if the federal claim supporting supplemental jurisdiction "is 'made solely for the purpose of obtaining jurisdiction' or if the claim is 'wholly insubstantial and frivolous.'" Kulick v. Pocono Downs Racing Ass'n, Inc., 816 F.2d 895, 898 (3d Cir. 1987) (quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946)). This is not a factual determination; dismissal is appropriate only where the claims are "insubstantial on their face." Id. (quoting Hagans v. Lavine, 415 U.S. 528, 542 n.10 (1974)). Further, "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Id. at 899 (quoting Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974)).

GRS contends that because the Court has federal question jurisdiction over its due process claim, it also has supplemental jurisdiction over GRS's state law mandamus request. See 28 U.S.C. § 1331 (providing for "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"); 28 U.S.C. § 1367 (establishing "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").

5

To make out a § 1983 due process violation, the plaintiff must show "that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).

GRS alleges that its due process rights were violated by the Township's "clandestine" approval of the Sound Walls Plan, including its failure to provide GRS adequate notice or an opportunity to be heard. (Compl., Doc. No. 1, ¶¶ 47-56; Motion for Mandamus, Doc. No. 3, at 2-4.) Unfortunately for GRS, it seeks to protect an insubstantial interest. The mere *risk* of harm—here, that in very limited circumstances emergency vehicles might not have easy access to every part of the property—is not a cognizable deprivation of life, liberty, or property. See Rivera v. Rhode Island, 402 F.3d 27, 37-38 (1st Cir. 2005) ("[A]n increased risk is not itself a deprivation of life, liberty, or property; it must still cause such a deprivation."). Moreover, there is no general, constitutionally protected interest in the enforcement of local ordinances. See Hameetman v. City of Chicago, 776 F.2d 636, 641 (7th Cir. 1985) ("The Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all."); Leland v. Moran, 235 F. Supp. 2d 153, 159 (N.D.N.Y. 2002), aff'd, 80 F. App'x 133 (2d Cir. 2003) (finding no constitutionally protected interest in enforcement of zoning code). This would be true even if the Township had violated its fire code or other state law. See Whittaker v. Cty. of Lawrence, 674 F. Supp. 2d 668, 695 (W.D. Pa. 2009), aff'd, 437 F. App'x 105 (3d Cir. 2011) ("[A] mere violation of a state statute [by defendant county] does not necessarily constitute a violation of the Due Process Clause.").

Even if its tenuous interest were protected, GRS has not cited, and I have been unable to find, authority that it had a federal constitutional right to be heard regarding the specifics of the Plan. Indeed, although a landowner has a right to be heard regarding compensation for a taking, there is no due process right to a hearing regarding the necessity of a taking by eminent domain. Bragg v. Weaver, 251 U.S. 57, 58 (1919) ("Where the intended use is public, the necessity and expediency of the taking may be determined by such agency and in such mode as the state may designate. They are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment."); cf. Local 736, Williamsport Firefighters v. City of Williamsport, 470 F. Supp. 344, 349 (M.D. Pa. 1979), aff'd, 601 F.2d 575 (3d Cir. 1979) (citizens not entitled to hearing before town reduced number of firefighters, even if reduction rendered fire protection inadequate). Finally, although GRS alleges it had no notice regarding the Plan, emails between counsel for GRS and Sunoco show that at least as early as November 2020, GRS had already learned of the Sound Walls Plan and objected to the Walls' construction—well before that construction even began. (Doc. No. 12-1, at 289.)

In sum, because GRS's § 1983 procedural due process claim is "wholly insubstantial," the Court does not have subject matter jurisdiction.

B. Supplemental Jurisdiction

Even if GRS's federal claim were viable, I would not exercise jurisdiction over its state law "mandamus" Count, and so would dismiss the "mandamus" Count.

I may decline to exercise supplemental jurisdiction over a claim that "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c). "[I]f it appears that the state issues substantially predominate, whether in terms

of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27 (1966).  The Third Circuit has explained that state issues predominate when "permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 789 (3d Cir. 1995).  That is certainly true here, where GRS asks me to administer the Township's fire code.

Once again, to promote safety, GRS asks me to: (1) rule that the Township must interpret and apply three sections of its fire code in a particular way; (2) prevent work on the GRS property before there is compliance with the code; and (3) award damages "resulting from the Township's failure to enforce the [code]."  (Compl., Doc. No. 1, at 13-14.)   These issues are distinct from whether the Township impermissibly failed to hear from GRS before approving the Plan.  Plainly, there is "a substantial quantity of evidence supporting their state claims that would not be relevant to the federal claims."  Borough of W. Mifflin, 45 F.3d at 789.

In sum, because non-federal issues predominate, GRS's state law "mandamus" claim is not appropriate for the exercise of supplemental jurisdiction.  Gibbs, 383 U.S. at 727.  ("[R]ecognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case.").

C. Standing

Federal courts have jurisdiction to hear only actual "cases or controversies."  U.S. Const. Art. III, § 2.  A plaintiff without standing to sue cannot meet this jurisdictional requirement.  Raines v. Byrd, 521 U.S. 811, 818 (1997).  GRS must thus show that: (1) it has suffered an injury that is "concrete and particularized" and "actual or imminent"—not "conjectural" or "hypothetical"; (2)

8

that the injury is fairly traceable to the Township; and (3) it is likely that the injury can be redressed by a favorable judicial decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted). As my discussion of jurisdiction suggests, GRS cannot meet these standing requirements.

Reilly v. Ceridian Corporation is particularly instructive. 664 F.3d 38, 43 (3d Cir. 2011). There, the Court ruled that the plaintiffs had no standing when the injury alleged was an increased risk of identity theft, after a third-party hacker might have stolen their data from the defendant, a payroll processing firm. 664 F.3d at 38. The Court admonished that because "[a]llegations of 'possible future injury' are not sufficient to satisfy Article III," "[a] plaintiff . . . lacks standing if his 'injury' stems from an indefinite risk of future harms inflicted by unknown third parties." Id. at 42. Harm to the Reilly plaintiffs would occur only after the hacker had actually saved the stolen information and misused it. Id. at 43. The plaintiffs thus lacked standing because they "ha[d] yet to suffer any harm, and their alleged increased risk of future injury is nothing more than speculation." Id.

Similarly, GRS has not demonstrated any "quantifiable risk of damage in the future." Reilly, 664 F.3d at 45. GRS alleges that the configuration of the Walls *may* prevent emergency vehicles from gaining easy access to all parts of the complex. (See, e.g., Compl., Doc. No. 1, ¶¶ 44-46, 56, 62-63.) Yet, GRS has not identified any part of the complex that is purportedly inaccessible. Rather, GRS alleges only that Sunoco's violations of the Township's fire code could create that risk. (See generally, Compl., Doc. No. 1.) This "alleged increased risk of future injury" is too conjectural to confer standing. See Reilly, 664 F.3d at 43; see also Clapper v. Amnesty Int'l USA, 568 U.S. 398, 416 (2013) (no standing for respondents who merely had "fears of hypothetical future harm that is not certainly impending"). Indeed, Sunoco and the Township

9

allege (without contradiction) that the Fire Department conducted three "trial" emergency visits to the property without issue, and emergency services have responded to two separate, actual emergencies without problems. (Township Response, Doc. No. 10, at 8; Sunoco Response, Doc. No. 12-1, at 17.)

Because GRS's claims of injury are speculative and hypothetical, I conclude in the further alternative that GRS does not have Article III standing to bring this suit.

D.  Authority to Grant Requested Relief

Under Pennsylvania common law, "[m]andamus is an extraordinary writ which will issue 'to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate and appropriate remedy.'" Shaler Area Sch. Dist. v. Salakas, 432 A.2d 165, 168 (Pa. 1981) (quoting Philadelphia Newspapers, Inc. v. Jerome, 387 A.2d 425, 430 n.11 (Pa. 1978)). Peremptory judgment in a Pennsylvania mandamus action is appropriate if, when construing all disputed facts in favor of the defendant "there exists no genuine issue of fact," "the case is clear and free from doubt," and "the right of the plaintiff thereto is clear." Id.; 231 Pa.C. § 1098. A Pennsylvania law mandamus is thus distinct from federal mandamus, which GRS is not seeking and which, in any event, could not issue here. 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel *an officer or employee of the United States or any agency thereof* to perform a duty owed to the plaintiff.") (emphasis added); Andrade v. Calif. Dep't of Corr., 2021 WL 412267, at *1 (C.D. Cal. 2021) (noting federal mandamus statute does not allow federal courts to "direct non-federal entities or officials in the performance of their duties"); see also Fed. R. Civ. P. 81(b) ("The writs of scire facias and mandamus are abolished. Relief previously available through them may be obtained by appropriate action or motion under

10

these rules."); but see Banks v. Hornak, 698 F. App'x 731, 737 n.10 (4th Cir. 2017) (noting that federal jurisdiction over actions in the nature of mandamus under 28 U.S.C. § 1361 exists, Rule 81(b) notwithstanding); La Buy v. Howes Leather Co., 352 U.S. 249, 255 (1957) (describing writs of mandamus available to federal appellate courts).

It is (to say the least) by no means clear that a federal court has the authority to employ state procedures created by state courts for their own use. Federal courts have long understood that they may apply state procedural law only in the most limited circumstances; none is present here. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) (establishing general rule that federal courts sitting in diversity apply state substantive law but federal procedural law); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (Erie doctrine also applies to pendent jurisdiction cases); but see Arnold v. BLaST Intermediate Unit, 843 F.2d 122, 124-25 (3d Cir. 1988) ("A district court is required to apply the procedural law of the forum state 'in proceedings supplementary to and in aid of judgment, and in proceedings on and in aid of execution' unless a federal statute governs.").

Remarkably, GRS argues that the "mandamus relief" it seeks here "is a matter of state substantive law . . . 42 Pa.C.S. § 8303." (GRS Opposition, Doc. No. 26, at 11.) This is simply incorrect. Section 8303 provides only that a person who defies a state court mandamus order is subject to a suit for damages. See 42 Pa.C.S. § 8303. As I have discussed, the state court issues the actual mandamus order as a procedural remedy pursuant to common law.

Although the decisions GRS offers all include the word "mandamus," they offer no support for the suggestion that a federal court may exercise supplemental jurisdiction to issue a state law mandamus. For example, in Eichenlaub v. Township of Indiana (on which GRS places particular emphasis), the challenged district court judgment included no equitable element—no mandamus

writ had issued or been denied.  Indeed, before the district court's judgment, the parties had, before the district court's judgment, settled the sole claim for equitable relief: a challenge to municipal approval of two development projects.  That left only a damages (*i.e.* legal) claim for review by the district and circuit courts.  This is why the district court "dismissed the Eichenlaubs' *petitions* for mandamus as moot," and the Circuit reversed only as to "the Eichenlaubs' claims for *damages incidental to mandamus*."  214 Fed. App'x 218, 221 (3d Cir. 2007) (emphasis added).  Eichenlaub thus provides no basis for the instant mandamus request.

In Cheyenne Sales, Limited v. Western Union Financial Services International, the Court treated the plaintiff's mandamus request as one for the issuance of a preliminary injunction.  8 F. Supp. 2d 469, 473 (E.D. Pa. 1998).  GRS has not asked me thus to transform its requested mandamus relief, however, nor has it shown that it would be entitled to the issuance of a mandatory injunction directing the Township as to how it should enforce its fire code.  See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (plaintiff seeking preliminary injunction must show that it is: (1) "likely to succeed on the merits"; (2) "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in [its] favor"; and (4) "that an injunction is in the public interest."); see also Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP, 528 F.3d 176, 179 (3d Cir. 2008) ("[W]here the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction.").  For instance, as I have discussed, GRS offers no authority suggesting that it was entitled to be heard before the Township approved the Plan, nor has it shown that the Township misapplied its fire code.  GRS thus has not shown that it "is likely to succeed on the merits" of this dispute.  Further, although GRS argues that it will suffer "irreparable harm" in the absence of an injunction, it offers no

supporting evidence. To the contrary, as I have discussed, GRS does not dispute that the Township has conducted three "trial" emergency visits to the property and that emergency vehicles have twice entered the complex—all without difficulty. (Township Reply, Doc. No. 17, at 2-3.) Similarly, even though GRS says it "has no other adequate remedy," it seeks damages in its "mandamus" Count. In these circumstances, GRS is not entitled to a mandatory injunction.

Although the other decisions GRS cites also include references to a "mandamus," in none did a federal court, exercising supplemental jurisdiction, issue a state law mandamus prescribing how a state or local agency must interpret and enforce its own regulations. Hayes v. Pittsburgh Bd. of Public Educ., 279 Fed. App'x 108, 110 (3d Cir. 2008); Mosley v. City of Pittsburgh Public School Dist., 702 F. Supp. 2d 561, 563 (W.D. Pa. 2010); Koslick v. Berryman, 2006 WL 8448496, at *2 (M.D. Pa. 2006); Hidden Creek Stock Farms, Inc. v. Upper Frederick Township Bd. of Supervisors, 1993 WL 40056, at *2 (E.D. Pa. 1993).

In sum, the Court does not have the authority to grant the relief GRS seeks. Accordingly, for this alternate reason as well, I will dismiss GRS's Complaint. See, e.g., In re Machne Israel, Inc., 48 F. App'x 859, 862 (3d Cir. 2002) (petitioner must show that court has authority to grant requested relief); Rogers v. Grewal, 2018 WL 2298359, at *3 (D.N.J. 2018), aff'd sub nom, 2018 WL 10808705 (3d Cir. 2018) (dismissing case where court lacked authority to grant requested relief); Nguyen v. Williams, 2016 WL 3405461, at *5 (E.D. Pa. June 21, 2016) (same).

E. Abstention

Even if the Court had subject matter jurisdiction, GRS had standing, and I had the authority to grant the relief requested, I would abstain from hearing this matter.

In urging me to "mandamus" the Township, GRS underscores that it is asking a federal court to administer state regulations against a public utility. Under the Burford abstention doctrine,

however, "a federal court should refuse to exercise its jurisdiction in a manner that would interfere with a state's efforts to regulate an area of law in which state interests predominate and in which adequate and timely state review of the regulatory scheme is available." Chiropractic Am. v. Lavecchia, 180 F.3d 99, 104 (3d Cir. 1999); Burford v. Sun Oil Co., 319 U.S. 315 (1943).  I thus should abstain if either:  (1) there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Chiropractic Am., 180 F.3d at 104 (quoting New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361 (1989)).  Under the second prong, I must consider:

> (1) whether the particular regulatory scheme involves a matter of substantial public concern, (2) whether it is the sort of complex, technical regulatory scheme to which the Burford abstention doctrine usually is applied, and (3) whether federal review of a party's claims would interfere with the state's efforts to establish and maintain a coherent regulatory policy.

Id. at 105 (internal citations and quotation marks omitted).

Burford typically applies when there is adequate state review in the form of an administrative or otherwise specialized process.  See United Servs. Auto. Ass'n v. Muir, 792 F.2d 356, 364 (3d Cir. 1986) ("Generally, Burford abstention is justified where a complex regulatory scheme is administered by a specialized state tribunal having exclusive jurisdiction.").  That review exists here.  GRS has already begun a proceeding against the appropriate entity—Sunoco—in the appropriate forum—the Public Utility Commission.  Although an ALJ has ruled that the Commission is without jurisdiction to consider violations of municipal ordinances, that hardly ends the matter, especially as GRS may seek interlocutory review or appeal the ALJ's eventual final decision.  See 66 Pa.C.S. § 322(h); 52 Pa. Code § 5.301 et seq.  Regardless of how the

administrative proceeding is resolved, however, the Commission certainly has jurisdiction to determine whether Sunoco's work site is *unsafe*:

> Whenever the commission, after reasonable notice and hearing, upon its own motion or upon complaint, finds that the service or facilities of any public utility are unreasonable, unsafe, inadequate, insufficient . . . the commission shall determine and prescribe, by regulation or order, the reasonable, safe, adequate, sufficient, service or facilities to be observed, furnished, enforced, or employed, including all such repairs, changes, alterations, extensions, substitutions, or improvements in facilities as shall be reasonably necessary and proper for the safety, accommodation, and convenience of the public.

66 Pa.C.S. § 1505.

Pennsylvania courts have thus emphasized the Commission's jurisdiction over utility safety: "Initial jurisdiction in matters concerning the relationship between public utilities and the public is in the PUC — not in the courts. It has been so held involving rates, service, rules of service, extension and expansion, [and] ***hazard to public safety due to use of utility facilities***[.]" Lansdale Borough v. Philadelphia Electric Company, 170 A.2d 565 (Pa. 1961) (emphasis added); see also Borough of Midland v. Steubenville, E. Liverpool & Beaver Valley Traction Co., 150 A. 300, 303 (Pa. 1930) ("In the instant case, the complaint is based on the use of facilities actually within the state, alleged to jeopardize the safety of the citizens, constituting a public nuisance. It is clearly within the power of the commission to make such order . . . as may be required to correct danger which exists[.]").

Once again, the gravamen of GRS's action is that the Township has created safety risks. For instance, in its Pre-Hearing Motion before the Commission, GRS alleges "[d]angerous conditions cause[d] by the installation of the sound walls at the property." Prehearing Memorandum at 4, Glen Riddle Station, L.P. v. Sunoco Pipeline L.P., C-2020-3023129.

In these circumstances, adequate, specialized state review is available. See also Popowsky v. Pennsylvania Pub. Util. Comm'n, 910 A.2d 38, 42 (Pa. 2006) (Commission proceeding addresses, *inter alia*, increased risk of fire due to water access problems for firefighters). That

review is bolstered by the robust procedures in place for appeals from Commission decisions. In New Orleans Public Service. Inc. v. Council of City of New Orleans, the Supreme Court emphasized that abstention had been proper in an earlier case where the "right of statutory appeal [was] 'concentrated in one circuit court,'" thus demonstrating that the state regulatory process had a "unified nature" and that "adequate state court review of [the] administrative order [was] available." 491 U.S. 350, 360-61 (1989) (some alterations in original) (citing Alabama Pub. Serv. Comm'n v. Southern R. Co., 341 U.S. 341 (1951)). The appellate rights Pennsylvania affords those aggrieved by the Commission further confirm that abstention is appropriate. See 66 Pa.C.S. § 332(h) (outlining procedure for appeal of ALJ decision to Commission); 52 Pa. Code § 5.301 et seq (describing procedure for interlocutory review); 42 Pa.C.S. § 763(a) (vesting Commonwealth Court with exclusive jurisdiction over appeals from the PUC); United Transp. Union v. Pennsylvania Pub. Util. Comm'n, 68 A.3d 1026, 1032 (Pa. Commw. Ct. 2013) (describing standard of review).

Moreover, the regulation of fire safety is a matter of substantial public concern. See Parow v. Kinnon, 300 F. Supp. 2d 256, 265 (D. Mass. 2004) ("[O]ne would be hard pressed to imagine a topic of greater public concern than fire safety . . . ."); United States v. Faulkner, 450 F.3d 466, 472 (9th Cir. 2006) (noting public interest in fire safety). GRS also impugns an overlapping, similarly important area of public concern: the regulation of natural gas pipelines. See Burford, 319 U.S. at 318 (creating doctrine in context of oil and gas regulations). This "complex, technical regulatory regime" is similarly appropriate for Burford abstention. Chiropractic Am., 180 F.3d at 105; see Grode v. Mut. Fire, Marine & Inland Ins. Co., 8 F.3d 953, 956 (3d Cir. 1993) ("[F]ederal courts should exercise equitable discretion and refrain from exercising authority over questions involving basic problems of state policy pertaining to the regulation of *important state natural*

*resources*") (emphasis added); cf. Khal Charidim Kiryas Joel v. Vill. of Kiryas Joel, 935 F. Supp. 450, 456 (S.D.N.Y. 1996) (federal court order that plaintiff had complied with state building and fire codes would be inappropriate under Burford); Hill v. City of Suffolk, 2010 WL 11530490, at *2 (E.D. Va. Dec. 1, 2010) (applying Burford to purported violations of building codes).

Finally, the Commonwealth's efforts to establish a consistent policy respecting fire and gas regulation would be frustrated if, at GRS's request, I prescribed how the Township must interpret and apply its own fire code. See PPL Elec. Utilities Corp. v. City of Lancaster, 125 A.3d 837, 844 (Pa. Commw. Ct. 2015), aff'd in part, rev'd in part on other grounds, 214 A.3d 639 (Pa. 2019) ("The courts of this Commonwealth have long recognized the intent of our General Assembly that public utilities be regulated on a uniform basis by a statewide regulator and not be subject to the varied regulation of the many cities, townships, and boroughs throughout the Commonwealth."); Chester Cty. v. Philadelphia Elec. Co., 218 A.2d 331, 333 (Pa. 1966) ("If each county were to pronounce its own regulation and control over electric wires, pipe lines and oil lines, the conveyors of power and fuel could become so twisted and knotted as to affect adversely the welfare of the entire state."); see also Hachamovitch v. DeBuono, 159 F.3d 687, 697 (2d Cir. 1998) (emphasizing that this factor involves the "extent to which the federal claim requires the federal court to meddle in a complex state scheme").

In these circumstances, even if the defects I have discussed were not present, I would abstain from hearing this matter.

F. Failure to State a Claim Under 12(b)(6)

I will not address the Township's and Sunoco's remaining contentions, persuasive though they may be. Nor will I address whether Sunoco, which conceived the Plan, erected the Walls,

and would be prejudiced by the relief GRS seeks, is an indispensable party.  See Fed. R. Civ. P. 19(b).

## V. CONCLUSION

GRS seeks to transform a local fire code dispute into a constitutional tort.  As the Seventh Circuit remarked in upholding the dismissal of a due process claim based on a zoning code dispute, "if the plaintiffs can get us to review the merits of [a local zoning board] decision under state law, we cannot imagine what zoning dispute could not be shoehorned into federal court . . . ."  Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 467 (7th Cir. 1988).  I will not allow GRS to "shoehorn" a fire code dispute into this Court.  I will thus grant the Township's Motion to Dismiss and deny GRS's "Emergency Motion for Writ of Mandamus and Peremptory Judgment."

An appropriate Order follows.

*/s/ Paul S. Diamond*

March 25, 2021                                            Paul S. Diamond, J.